IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, | ) |
| Plaintiff, | ) Case No. 10 CR 783 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| MARVIN CHAPMAN, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On May 27, 2011, a jury convicted defendant Marvin Chapman ("Chapman") of possessing with the intent to distribute a controlled substance, namely a quantity of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) ("Count I") and acquitted Chapman of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count II") and of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Count III"). Chapman appealed his conviction primarily on the grounds that the Court should not have admitted certain 404(b) evidence against him. Oral arguments took place before the Seventh Circuit Court of Appeals on November 28, 2012. The opinion from the Seventh Circuit has not yet been issued.

Defense counsel moves now for release on bond pending the release of the opinion from the Seventh Circuit and for recusal. Defense Counsel argues that there is a high likelihood that the jury trial will be reversed based on his interpretation of the oral argument before the appellate court. Since the only conviction is the drug conviction and Chapman has been incarcerated now for nearly two years during the process of the appeal, Defense Counsel seeks to have him

released for

"fundamental fairness" that Chapman should not have to "wait indefinitely" in custody for an opinion in "a straightforward case," that he has already served the approximate amount of time he would receive for a marijuana offense (he was convicted of a heroin offense), and it is clear to Defense Counsel that the conviction will be reversed.

Defense counsel next moves for recusal alleging that this Court's impartiality might reasonably be questioned based both on the rulings made during Chapman's trial which included the admission of the 404(b) evidence against Chapman and that the Court emailed the Deputy Chief Marshal for the Northern District of Illinois during the course of the trial to inform the deputy that his wife, one of the AUSAs on the case, was about to begin her opening statement to the jury. For the following reasons, the Court denies Defense Counsel's motion for recusal based on the communication because no breach of ethics occurred nor could a reasonable observer find that the communication indicated any bias against Chapman or in favor of the Government. The Court, however, grants recusal on other grounds: now that defense counsel has challenged the ethical integrity of the Court and sought to disclose her personal emails to bolster his frivolous claim, this Court finds that an objective observer may reasonably question whether the Court can set aside the false accusations and rule objectively on the pending Motion for Release and therefore another judge should hear that motion and any other matters that may arise.

## **DISCUSSION**

Defense counsel moves for recusal based on what he describes as "at minimum an appearance of bias or prejudice based on the facts of the case." This bias he claims includes the rulings made by the Court in favor of the Government on evidentiary issues and that the "Court appears to have been exchanging emails with the husband of the prosecutor" during the case.

First, the Court's evidentiary rulings during trial cannot form the basis for perceived bias. Each trial court judge reviews the facts and the law and makes numerous decisions each day on the basis of that review – some favor the defense and some favor the prosecution – a court ruling is challenged by appealing. Chapman has challenged the admissibility of the evidence and that decision is currently pending. Therefore, he has received the due process necessary to redress whatever harm he believes has occurred from the Court's ruling.

Second, the email string of six lines between the Deputy Chief of the United States Marshal and the Court do not represent improper communication and show no bias for the Government. The Court ruled on the 404(b) issue on May 16, 2011, nine days before the email communication occurred. Nine months after arguing the case before the Seventh Circuit, on September 3, 2013, the Criminal Appellate Division of the Department of Justice provided the email string that it had obtained from the Office of Inspector General during an investigation into a number of areas in the United States Marshal's office in the Northern District of Illinois to the Seventh Circuit and defense counsel.[1]

---

[1]The Court is well-aware of the various investigations due to the indictment that was charged in *United States v. Linder*, 2013WL 812382, 12 CR 022 (N.D. IL. March 5, 2013) which was assigned to this Court. Aside from the numerous briefings, the Court held an evidentiary hearing in that matter in September 2012 and heard witness testimony about the OIG investigation into the case and the relationship of the OIG investigator with certain US Marshal Service employees. In a 109 page opinion, this Court found that the indictment in *Linder* must be dismissed for Constitutional violations committed by the OIG inspector and due to the interference of the Government in the efforts of the defense attorney to interview witnesses and

During the summer of 2013, the Criminal Appellate Section was reviewing this Court's opinion in one aspect of the U.S. Marshal investigation which led to the dismissal of the indictment and most likely would have been in possession of the OIG investigative materials when making its decision on how to proceed with that appeal. In September 2013, the Section provided the six line communication to Defense Counsel and the Seventh Circuit. Defense counsel sought discovery before the Seventh Circuit of more than the six lines of text provided to him from the Appellate Section.

In response, the Appellate Section then extensively searched years of the DOJ email accounts of both the Deputy Chief Marshal and the AUSA it had obtained from the OIG investigation. After searching for all communications between the Deputy Marshal and the AUSA and the Court, the Appellate Section provided a summary of those communications to the Seventh Circuit Court of Appeals showing that no improper relationship existed then or now between the Court and the AUSA and the Deputy Chief Marshal. In its summary, the Appellate Section confirmed that there was nothing unusual or out of the ordinary about the emails between the Court, the AUSA (her former colleague) and the Deputy Marshal (her court security officer).

The Criminal Appellate Section noted that the professional and collegial relationship between colleagues was not improper. Citing to the Seventh Circuit, the Section noted:

> In today's legal culture, friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges

---

prepare a defense.

> if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts have held that a judge need not disqualify himself just because a friend – even a close friend–appears as a lawyer. *E.g., In re United States*, 666 F.2d 690 (1st Cir. 1981); *Parrish v. Board of Commissioners*, 524 F.2d 98 (5th Cir. 1975)(en banc).

*United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985). Disqualification is required only when there is some "unusual" aspect to the social relationship. *Id.* at 1538. The Appellate Section, having reviewed all of the email communication between the Court and the AUSA (four years) and the Deputy Chief Marshal (seven years) could find nothing unusual about the relationship and could not even describe it as close. Defense counsel in its Motion to Recuse no longer asserts that the professional relationship is a basis for recusal.

As for the email string which took place on May 24, 2011, in that string, the Court emailed the Deputy Chief Marshal to inform him that his wife, an AUSA, was about to begin her opening statement. When the Deputy Chief arrived in Court, the opening was over and a government witness, a local police officer, was on the stand. The Deputy Chief, who is not a member of the prosecution team, but rather a member of the Court's security team, commented colloquially about the nervousness of the local officer testifying in federal court and how he looked as though he came from "central casting." The Court responded, in sum, that he indeed looked nervous even in front of the Defense Counsel. No communication was made between the Court and the prosecutor nor between the Deputy Marshal and the prosecutor about that exchange. That is the entire extent of the communication that day.

Defense Counsel asserts that this short exchange displays a bias by the Court or at least the appearance of a bias in favor of the Government. No reasonable objective observer could find this to be the case for the following reasons. First, it is not improper for a trial judge to communicate with the Deputy Marshals or the Court Security Officers either personally, by

5

phone, or by email. Each day, trial judges speak with the Deputy Marshals to inform them of the timing of court appearances, when various breaks will occur in the day, who will be testifying and when, and any observations that the judge passes on to ensure the efficiency and safety of the courtroom proceeding. Therefore, the email communication itself notifying the Deputy Marshal of the beginning of the trial cannot constitute bias. The communication was not between the prosecutor and the Court – it was between the court and an employee of the court family, a deputy marshal who provides security to the Court. Collegial banter with courthouse security who is not a party to or a witness in a case before the Court does not constitute bias. U.S. Marshals and the federal court ordinarily have a "close and harmonious relationship." *See Pennsylvania Bureau of Corrections vs. U.S. Marshal Service*, 474 U.S. 34, 43-44 (1985).

Secondly, the mere fact that the AUSA and the Deputy Marshal are married does not change that equation. The Deputy Chief was harmlessly being notified of the start of the trial so that he could observe his wife's performance during her opening statement to the jury. Nothing in the record suggests otherwise. The Deputy Marshal is an employee at the courthouse and was not a member of the prosecution team, was not a witness in the case, and was not working on the case. Although Defense Counsel asserts that this exchange might represent bias, the banal communication speaks for itself. Nothing is mentioned about the rulings that the Court had already made or might make in the future. In fact, the only comment made about the trial was made about a Government witness in a casual, joking manner and instigated by the Deputy Chief. The case was a jury trial where the jury would be the ultimate deciders of the credibility of the witnesses and the pithy observation was not provided to anyone else – it occurred solely between the Court and her court security officer. Judges and their security staff speak candidly with each other regularly with the understanding that confidentiality between them characterizes

their exchanges as it must in order for them to ensure the safety and efficiency of the court proceeding. Glaringly absent from the six-line exchange is any comment about the defendant and the only reference regarding the Defense counsel was, in short, that she was clearly in control of the courtroom and the government witness appeared intimidated by her. The banter therefore actually favored the defense. No outside observer could view this exchange as something biased that could be used to aid the Government or the Government's case nor does it show any bias against the Defendant.

Third, the very source of the emails that were provided to the Defense Counsel from the Appellate Section belies any pro-government bias on behalf of this Court. To be absolutely clear, the Appellate Section obtained the emails from an entirely unrelated OIG investigation that had nothing to do with the Chapman prosecution or any investigation for that matter involving this Court. The Appellate Section obviously reviewed the Deputy Marshal's emails as part of an OIG investigation regarding the U.S. Marshal's Service and most likely when making its decision whether to appeal this Court's dismissal of the DOJ criminal indictment involving the OIG investigation. A reasonable observer could not conclude that this email banter constitutes a pro-government bias that might call into question this Court's ability to judge the case fairly for five reasons: the source of the emails was not related to the case before the Court and was derived instead from an unrelated OIG investigation into U.S. Marshal activity in the Northern District of Illinois; the Court's previous published decision about one aspect of that investigation resulted in a significant ruling in favor of the defense in that case; the frivolous nature of the brief back-and- forth in the emails; the lack of any comments in that communication about the defendant or the rulings in this case; and the communication itself was not between the Court and the prosecution, but rather, between the Court and one of the Court employees who worked with

the Court daily.  Therefore, the Court denies Defense Counsel's motion to recuse based on the alleged improper communication with the Deputy Chief Marshal.

Next pending before the Court, is Chapman's Motion for Bond Pending Appeal.  In this motion, Defense Counsel sets forth his belief that this Court's evidentiary ruling on 404(b) will most likely be reversed.  In support of this, Defense Counsel prepared a partial rough transcript of the oral argument in this case.  This is the first time that the Court has seen the transcript and has been informed of the argument.  Defense Counsel correctly states that at least two of the judges on the panel question the admissibility of the evidence.  Although one should not make it a practice to read the tea leaves of oral argument, it is not an unreasonable position to argue that based on the comments on the record that the case may be reversed.

This leads to a situation where Chapman, who has been incarcerated for two years, now seeks to be released on bond.  This Court must engage in an objective analysis of the conditions of release or detention and whether he should remain incarcerated.  A potential reversal as alleged by the defense, and any other information presented to the Court regarding the reasons for release should be reviewed by a fair and impartial jurist.  The question now becomes whether this Court, in light of having her integrity questioned by Defense Counsel, and in light of his vigorous advocacy for the release of years of professional communications between the Court and the Deputy Marshal and AUSA triggered by the banal exchange presented here, should be the one to make that review.  Would a reasonable observer question whether the Court can be fair to Chapman after his Defense Counsel attacked her integrity and sought to obtain years of her personal emails?  Here, the Court thinks the answer must be "possibly," and therefore recuses to allow another judge to address the matter without the baggage of counsel's filings. While the Court believes that she can objectively address the matter as she does with all cases

before her Court, that is not the standard for recusal. Certainly an outside observer might question whether the Court can set aside this significant invasion of privacy into her professional correspondence in an effort to support an allegation of impropriety against her.

The Court recognizes the proverbial slippery slope that this ruling provides. If a Defendant does not like the Court's ruling, defense counsel can merely allege that the Court committed an impropriety based on the slimmest of facts and get a new judge. Under normal circumstances, this Court would deny such a motion for recusal due to the obvious forum shopping efforts by Defendant and his attorney. (Codes of Conduct Committee Advisory Opinion 103 warns against the automatic recusal under such circumstances.) Yet, this case has the added wrinkle of Defense Counsel's position before the appellate court seeking to explore the Court's private email communications between the AUSA and the Deputy Marshal for years in order to seek out any mundane material to use to create even a threadbare accusation. The results of that search, which the Appellate Section conducted, clearly show that this Court acted ethically and with impartiality throughout the years of contact that were reviewed and presented. That extra step of intrusion, however, which defense counsel continues to press before the Seventh Circuit, having not been satisfied with the Appellate Section's review, could be judged by an outside observer to be so offensive that this Court could not act impartially toward Defense Counsel who initiated it. Therefore, recusal is appropriate.

**CONCLUSION AND ORDER**

For the reasons stated, the Court denies Defense Counsel's Motion for Recusal on the grounds presented because no reasonable observer could find that the communications indicated any bias against the Defendant nor can the Court's ruling on 404(b) support an inference that the Court is biased against the Defendant. The Court recuses from the matter due to the potential

appearance that an objective observer may question whether the Court can objectively assess Chapman's Motion for Bond Pending Appeal in light of Defense Counsel's false accusation of impropriety and attempt to obtain personal emails of the Court. The case shall be returned to the Executive Committee to be reassigned randomly.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 21, 2014